Thomas F. Armosino, OSB #911954
Email: Armosino@fdfirm.com
FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 East Barnett Road
Medford, OR 97504
Phone: (541) 779-2333
Fax: (541) 779-6379
 *Attorney for Defendant Warren Roberts, M.D.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| CESAR MUNOZ,<br><br>            Plaintiff,<br><br>v.<br><br>STATE OF OREGON; JACOB ("DALE") MCKINNEY; WARREN ROBERTS; JOSEPH BUGHER; and JOHN DOES 1-20.<br><br>            Defendants. | Civil No.: 6:22-cv-1348-SI<br><br>**DEFENDANT ROBERTS' MOTION FOR PROTECTIVE ORDER**<br><br>**EXPEDITED HEARING REQUESTED**<br><br>**ORAL ARGUMENT REQUESTED** |

Defendant Warren G. Roberts, M.D., by and through his attorney of record, Thomas F. Armosino, hereby submits this Motion for Protective Order pursuant to Fed. R. Civ. P. 26(c), seeking to preclude production and inquiry into the contents or findings of an internal ODOC

**PAGE 1- DEFENDANT ROBERTS' MOTION FOR PROTECTIVE ORDER**

investigative report that is irrelevant to Plaintiff's claims and protected by the attorney-client and work-product privileges.

## MOTION

Defendant Roberts understands Plaintiff's Counsel is seeking protected information from case Co-Defendants. Pursuant to Fed. R. Civ. P. 26(c), Defendant Dr. Warren G. Roberts respectfully moves this Court for a protective order forbidding or strictly limiting production of or inquiry during his deposition into the contents or findings of an internal ODOC investigative report that bears no relevance to the claims in this action and implicates protected attorney-client communications, attorney work product, and privileged peer review information.

Dr. Roberts requests that this Court take judicial notice of the same motion filed in *Pierce v. Peters et al.,* Case No. 3:21-cv-01693-JR, where Judge Jolie Russo, following an in camera review, found that the ODOC investigative report was protected by the attorney-client and attorney work product privileges holding that the document would not be released to the Plaintiff nor was the Plaintiff permitted to question witnesses about the document (*Pierce v. Peters et al.,* ECF 53*)*.

Dr. Roberts further requests that this Court, to the extent it feels it would be beneficial, conduct an in camera review of the ODOC "investigative" report.

## INTRODUCTION

Plaintiff Cesar Munoz ("Plaintiff"), an Adult in Custody, brings a narrow Eighth Amendment claims under 42 U.S.C. § 1983 for cruel and unusual punishment based on alleged delays in medical treatment and access to appropriate care while incarcerated within the ODOC (ECF 2).

The specific factual allegations against Dr. Roberts, as contained in Plaintiff's complaint, surround an alleged delay in shoulder surgery.

1) ECF 41, ¶ 32: Sometime in late 2023, Plaintiff received a letter from Defendant Roberts acknowledging the delay, and informing plaintiff that his surgery was expedited.

The remaining "facts" are self-serving renditions of Plaintiffs perception of the ODOC medical system.

Plaintiff's counsel at ECF 41, ¶ 36-50 concern only the report at issue. There is no alleged nexus between the allegations and Plaintiff's specific claims for medical need. Despite the narrow scope of Plaintiff's claims and the uncertainty of Dr. Roberts' specific involvement in this medical case, Plaintiff seeks production of an irrelevant ODOC investigative report that was prepared by outside legal counsel and expressly designated as attorney-client privileged, in connection with matters wholly unrelated to Plaintiff's medical care. That investigative report, aimed at investigating broader personnel and administrative issues at various ODOC facilities, has no direct connection to Plaintiff's factual allegations and falls well outside the scope of this case.

## LEGAL STANDARD

Discovery under Fed. R. Civ. P. 26(b)(1) is limited to matters "relevant to any party's claim or defense." Although discovery is broad, it "has ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351–52 (1978).

Under Rule 26(c), the Court may issue protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). The moving party must show "good cause" through specific facts, balanced against the need for disclosure. *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004). Rule 26(c)(1)(C) authorizes the Court to forbid inquiry into certain matters or to limit the scope of discovery.

/ / /

## ARGUMENT

**A. The ODOC Investigative Report Is Protected by Attorney-Client Privilege and Work Product Doctrine**

The report Plaintiff seeks was prepared by outside legal counsel retained by ODOC to conduct an independent legal investigation. Such materials constitute confidential legal communications protected under ORS 40.225 (attorney-client privilege) and the work product doctrine codified in ORCP 36(B)(3).

Oregon courts recognize that communications with outside counsel conducting internal investigations for legal purposes are privileged. In *Klamath County School District v. Teamey*, 205 Or. App. 524, 530–31 (2006), the Court of Appeals held that reports created by an outside investigator at the direction of legal counsel were protected as confidential legal communications under OEC 503. See also, *Upjohn Co. v. United States*, 449 U.S. 383, 397, 101 S. Ct. 677 (1981)( holding that the [attorney client] privilege applies to an internal investigation conducted by counsel covered not only those in the client's "control group," but extends to communications with all of the client's employees) (cited with approval in State ex rel. *Oregon Health Sciences Univ. v. Haas,* 325 Or. 492, 500, 942 P.2d 261 (1997)).

Even though the report was purportedly factual in nature, its purpose was to enable legal counsel to provide advice to the institution, precisely the type of communication the attorney-client privilege is designed to protect. It is not a mere coincidence that every single page of the report is expressly designated "attorney-client privileged."

In addition to being privileged, the report is protected under Oregon's work product doctrine, which shields materials prepared in anticipation of litigation by or for a party or that party's attorney. See ORCP 36(B)(3). This protection ensures that parties and their counsel can prepare for potential

/ / /

**PAGE 4- DEFENDANT ROBERTS' MOTION FOR PROTECTIVE ORDER**

litigation without concern that their legal strategies, investigatory steps, or conclusions will later be exposed to adversaries.

In Meyer v. Oregon Lottery, 292 Or. App. 647, 672–73 (2018), the Court of Appeals held that reports and notes compiled by outside legal counsel conducting an internal investigation were protected work product. Even where a final version of the report was voluntarily disclosed to the plaintiffs, the court declined to compel production of underlying notes and drafts, emphasizing that such materials were created in anticipation of litigation and not subject to wholesale waiver. The court rejected the notion that disclosure of one document destroyed protections for the entire investigative file.

The same logic applies here. The report at issue was prepared by outside legal counsel precisely because ODOC anticipated legal and institutional risk. Whether or not litigation had already commenced is beside the point. What matters is that the dominant purpose of the investigation was to enable the agency to assess legal exposure and potentially defend itself in legal or administrative proceedings. That is exactly what the work product doctrine is designed to protect. (Decl of T. Armosino ¶ 3)

Plaintiff can make no showing that he has a "substantial need" for the report or that he cannot obtain the factual information he seeks through other means, as required to overcome the work product protection under ORCP 36(B)(3). The timeline of his medical care, the conduct of treating providers, and the relevant ODOC policies are all matters subject to targeted discovery without implicating privileged legal assessments or internal legal counsel strategies. To require Dr. Roberts to produce the independent counsel's investigatory report would be to compel production of a protected legal strategy and evaluation for use by an opposing party, which Oregon law does not permit.

///

**PAGE 5- DEFENDANT ROBERTS' MOTION FOR PROTECTIVE ORDER**

What sets this report apart from a standard HR memo or personnel review is the nature of its authorship and purpose. When a report is initiated by Human Resources to assess general performance or discipline, courts may view it as a business record. But where, as here, the investigation is undertaken independently by legal counsel, for the express purpose of enabling informed legal advice, its character transforms from routine internal documentation to protected legal work. The involvement of outside legal counsel here was not incidental or procedural; it was foundational. That legal context should guide the Court's analysis.

**B. Most, if not the Entire, Report Is Irrelevant to the Claims at Issue**

Plaintiff's claims against Dr. Roberts are confined to his alleged medical care and treatment while in ODOC custody. An internal investigation primarily related to Dr. Roberts' leadership responsibilities, administrative decisions, and professional relationships with colleagues within ODOC has no demonstrable bearing on Plaintiff's specific claims alleged in this lawsuit.

The Ninth Circuit in *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 540 (9th Cir. 2020), held that discovery requests aimed at uncovering additional wrongs or collateral matters, rather than supporting the claims actually asserted, fall outside the permissible scope of discovery. As in *Williams-Sonoma*, the report here appears sought not for its probative value but for the potential prejudice Plaintiff might attach to it. Any internal ODOC report that includes performance reviews, disciplinary assessments, or investigations into unrelated incidents, particularly those involving other Adults in Custody, facilities, or time periods, is not relevant to proving or disproving the elements of Plaintiff's § 1983 deliberate-indifference claim.

As the court in *Williams-Sonoma* emphasized, discovery cannot be used merely to search for new claims or for generalized background attacks against a litigant. 947 F.3d at 540; see also *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'").

**PAGE 6- DEFENDANT ROBERTS' MOTION FOR PROTECTIVE ORDER**

This Court should enforce the limitations imposed by Rule 26(b)(1): discovery is confined to matters that "bear on" the elements of Plaintiff's § 1983 claims. There is no claim in this case for retaliation, whistleblowing, or generalized policy failure that could render Dr. Roberts' personnel or investigatory records relevant. Even if the report contains references to administrative or policy issues in which Dr. Roberts was involved, unless those matters are directly tied to Plaintiff's specific allegations, they remain outside the proper scope of Rule 26(b)(1). The burden on Dr. Roberts, in terms of privacy, reputational harm, and prejudice, greatly outweighs any speculative or marginal value of such information.

## C. Almost the Entire ODOC Report Is Based on Privileged Information Obtained by the Investigator

The Court should not allow inquiry into the specifics of the ODOC investigative report because, in addition to containing attorney-client and work-product privileged material, it is almost entirely derived from privileged information gathered by the independent investigator. This privileged information includes data and statements obtained through the peer review process (and thus protected under ORS 41.675), quality-control and quality-assurance privileged information, and protected health information of *other* Adults in Custody, none of which pertain to Plaintiff Cesar Munoz. (Decl of T. Armosino ¶ 2)

## D. Information Regarding Dr. Roberts' Position on the ODOC Report Is Protected by Attorney-Client Privilege and Work Product Doctrine, and Requiring Him to Respond Would Cause Undue Burden and Oppression to Dr. Roberts

Perhaps most importantly, the ODOC investigative report is a one-sided, unilaterally prepared, apparent witch-hunt placing significant systemic issues within the ODOC on Dr. Roberts as an individual. Dr. Roberts, through counsel, has put the State on official notice of his intent to bring an employment suit against it. Dr. Roberts, through privileged discussions with his attorney,

**PAGE 7- DEFENDANT ROBERTS' MOTION FOR PROTECTIVE ORDER**

has determined claims, defenses, and responses relating to the ODOC investigative report for the purposes of his employment suit.

To answer questions regarding the report would require Dr. Roberts to disclose information protected by the attorney-client privilege and work product doctrine. It would also place an undue burden on him, as the contents of the report are irrelevant to this case, and being forced to answer questions regarding the report could have a significant impact on his pending employment case.

## CONCLUSION

This case presents narrow questions regarding alleged delays in medical treatment and failure to provide appropriate care. Plaintiff's claims against Dr. Roberts are limited in scope and do not involve the administrative or employment matters that were the subject of the ODOC investigative report.

These claims do not warrant the production of, or broad-based questioning regarding, unrelated investigative reports or prejudicing and placing an undue burden on Dr. Roberts by requiring him to disclose attorney-client privileged and work product information that could cause detriment to his potential employment claim against the State.

Oregon law strongly favors protecting attorney-client communications and attorney work product, especially when the materials at issue were prepared in the course of an independent legal investigation. Disclosure in this context would undermine institutional efforts to seek candid legal advice, chill the use of independent legal investigations, and expose Dr. Roberts to additional reputational and legal harm without advancing the factual resolution of Plaintiff's § 1983 claim.

Even assuming some marginal relevance, the proper course is to limit inquiry to ensure that any disclosure is confined to matters directly tied to Plaintiff's allegations and does not compromise privileged legal analysis or sensitive personnel matters.

Accordingly, Dr. Roberts respectfully requests that this Court grant this Motion for Protective Order and forbid inquiry into the ODOC investigative report from any defendant. In the alternative, Dr. Roberts requests that the Court impose protective conditions to preserve confidentiality, prevent prejudice, and keep discovery aligned with the legitimate scope of this litigation.

DATED this 6th day of November 2025.

    FROHNMAYER, DEATHERAGE, JAMIESON,
    MOORE, ARMOSINO & McGOVERN, P.C.

    By: _____
    Thomas F. Armosino, OSB #911954
    Armosino@fdfirm.com
    *Of Attorneys for Defendant Warren Roberts, M.D.*

**PAGE 9- DEFENDANT ROBERTS' MOTION FOR PROTECTIVE ORDER**

## CERTIFICATE OF SERVICE

I certify that I served the foregoing **DEFENDANT ROBERTS' MOTION FOR PROTECTIVE ORDER** upon:

**Juan C. Chavez**
PO Box 5248
Portland, OR 97208
**Email:** jchavez@ojrc.info
*Attorney for Plaintiff*

**Walter F. Fonseca**
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97209
Email: wfonseca@ojrc.info
*Attorney for Plaintiff*

**Robert E. Sullivan**
**Nathaniel Aggrey**
Oregon Department of Justice
Trial Division
1162 Court Street NE
Salem, OR 97301
Email:robert.sullivan@doj.oregon.gov
Nathaniel.Aggrey@doj.oregon.gov
*Attorney for Defendants State of Oregon, & Jacob Dale McKinney*

**Brian Epley**
**Jonathan W. Monson**
**Nicole A.W. Abercrombie**
Cable Huston LLP
1455 SW Broadway
Suite 1500
Portland, OR 97201-3412
Email: bepley@cablehuston.com
jmonson@cablehuston.com
nabercrombie@cablehuston.com
*Attorney for Joseph Bugher*

☒ by automatic electronic transmission via the Court's Case Management and Electronic Case Filing practice.

☒ by emailing a copy thereof to said attorney, certified by me as such.

☐ by personally handing said attorney a copy thereof, certified by me as such, on the date set forth below.

☐ by faxing to said attorney a copy thereof, certified by me as such, during normal office hours, addressed to said attorney at said attorney's last known facsimile number as indicated above. Proof of such transmission is attached hereto.

DATED this 6th day of November 2025

Thomas F. Armosino, OSB #911954
Armosino@fdfirm.com
*Of Attorneys for Defendant Warren Roberts, M.D.*